**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| SARA MOSS,           )           | 3:04-CV-0267-ECR(RAM) |
|      Plaintiff,     )           | |
|                     )           | ORDER |
| vs.                 )           | |
|                     )           | |
| WASHOE MEDICAL CENTER, INC., )  | |
| a Nevada non-profit )           | |
| corporation, et al., )          | |
|                     )           | |
|      Defendants.    )           | |
| _____ )           | |

In her Complaint (#2), Plaintiff seeks judgment on two grounds:

(1) Hostile work environment, which is based solely on sexual harassment by a co-worker, Michael Wagner,

(2) Retaliation for having complained of and opposed the claimed sexual harassment and hostile work environment of Michael Wagner.

The sole defendant Washoe Medical Center, Inc. ("Defendant" or "Washoe") has filed a motion (#37) for summary judgment; Plaintiff has filed an opposition (#42) to the motion; and Defendant filed a reply (#47) in support of the motion.

SUMMARY JUDGMENT STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. Nw. Motorcycle Ass'n v. U.S. Dep't. of Agriculture, 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Baqdadi v. Nazar, 84 F.3d

1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form--namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed. R. Civ. P. 56(c); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the

appropriate standard of proof. Anderson, 477 U.S. at 248. Summary Judgement is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

FACTS

Plaintiff was employed as a graduate and registered nurse by Defendant from January 17, 2002, to December 23, 2002. Michael Wagner worked at Washoe through an employment agency as a respiratory therapist from February 25, 2002, to February 28, 2003. Both Plaintiff and Wagner worked for a period of time in the I.C.U. at the hospital.

Plaintiff states that during the time she and Wagner worked in the I.C.U., commencing in February or March 2002, he subjected her to sexual harassment by sexually suggestive comments, sexual gestures, use of the internet to cause pornographic materials to be sent to her, and use of abusive language. She claims this conduct resulted in a hostile/abusive work environment.

Plaintiff did not report the sexual harassment to her supervisors until August 26, 2002. On August 26, 2002, she filed a written complaint against Wagner for sexual harassment. Defendant immediately

initiated an investigation (although there is a genuine issue of material fact as to whether Plaintiff was advised of the results of the investigation.)

Thereafter on August 27, 2002, Wagner was given a disciplinary notice of corrective action, told to cease the harassment, to stay away from Plaintiff, and that if he was seen in the I.C.U. or the I.C.U. annex he would be terminated.

Plaintiff testified in her deposition that Wagner never harassed her thereafter. The harassment stopped. Plaintiff claims that, even though he never again harassed her, Wagner was present at times after that in or about the I.C.U. and she saw him there. However, there is no evidence that Plaintiff ever reported this fact to Defendant's supervisors.

Wagner was never fired or suspended by Defendant.

On December 9, 2002, Plaintiff submitted a letter of resignation to Defendant. On December 11, 2002, Plaintiff applied for a job with another nursing agency.

Plaintiff also claims that she was retaliated against after she first reported the sexual harassment to her superiors. She states she was subjected to verbal abuse, disciplinary action, excessive scrutiny, suspension, and termination as result of reporting the harassment.

Plaintiff never completed the Defendant's internal grievance procedure, which she might have done even though she terminated her employment before the procedure was complete. She alleges a credible threat of retaliation as an excuse for not completing the procedure, but no evidence in the record supports that claim.

initiated an investigation (although there is a genuine issue of material fact as to whether Plaintiff was advised of the results of the investigation.)

Thereafter on August 27, 2002, Wagner was given a disciplinary notice of corrective action, told to cease the harassment, to stay away from Plaintiff, and that if he was seen in the I.C.U. or the I.C.U. annex he would be terminated.

Plaintiff testified in her deposition that Wagner never harassed her thereafter. The harassment stopped. Plaintiff claims that, even though he never again harassed her, Wagner was present at times after that in or about the I.C.U. and she saw him there. However, there is no evidence that Plaintiff ever reported this fact to Defendant's supervisors.

Wagner was never fired or suspended by Defendant.

On December 9, 2002, Plaintiff submitted a letter of resignation to Defendant. On December 11, 2002, Plaintiff applied for a job with another nursing agency.

Plaintiff also claims that she was retaliated against after she first reported the sexual harassment to her superiors. She states she was subjected to verbal abuse, disciplinary action, excessive scrutiny, suspension, and termination as result of reporting the harassment.

Plaintiff never completed the Defendant's internal grievance procedure, which she might have done even though she terminated her employment before the procedure was complete. She alleges a credible threat of retaliation as an excuse for not completing the procedure, but no evidence in the record supports that claim.

EVIDENTIARY OBJECTIONS

We proceed to consider evidentiary objections made by Defendant.

(1)  The Statement of Gregg Koper.

Defendant objects to the fact that Mr. Koper's statement was not made under penalty of perjury and therefore claims the statement does not meet the requirements of Fed. R. Civ. P. 56(e) as an affidavit or as a declaration under 28 U.S.C. § 1746.

The statement does not met the requirements of Section 1746 as a declaration.  The notarization on the statement is in terms of "Subscribed and sworn to before me."  The notarization is not in terms of having been sworn to as true in the form of the verification attached to the Complaint.

The Nevada Statute NRS 240.167 uses the same language for a Jurat, "Subscribed and sworn to before me."  NRS 240.1655 2(e) requires, in respect to execution of a Jurat, that the notary administer an oath in the form of "Do you . . . solemnly swear . . . that the statements in this document are true . . ."

The State of Hawaii Notary Public Manual indicates the same rules and procedures apply in Hawaii.  According to the manual, the so-called, "Subscribed and sworn to" clause, or "Jurat" when executed indicates that the person making the statement has been sworn to tell the truth.  The statement of Mr. Koper is therefore in form admissible in evidence in consideration of the motion for summary judgment to the extent that Mr. Koper is shown to be competent to make the statement and his statement is relevant to the matters at issue.

However, Mr. Koper's statement adds little, if any thing, to the mix.  His general statements regarding his observations of the conduct of employees of Defendant at large in the hospital, and that there

were no disciplinary actions taken, are irrelevant and incompetent to the issues we face in this case. There is no showing Mr. Koper, merely as an employee and not a supervisor, would know whether disciplinary actions were actually taken against offending employees. Furthermore, none of the general observations are tied to the factual scenario relevant to this case. Nor is there any showing that the circumstances he observed were similar to those involving Plaintiff. Mr. Koper's statements are just in general things he observed. Mr. Koper has knowledge, he states, regarding claimed retaliation against Plaintiff, "with the photo taking incident." The incident involved alleged inappropriate photo taking by Plaintiff. The statement doesn't indicate what the photo taking incident was, or what the retaliation was. At most, the statement may support Plaintiff's claim that she was disciplined on account of her claimed photo taking in retaliation for reporting Wagner's sexual harassment. Mr. Koper's statement that he saw Michael Waggoner (sic) RT in the I.C.U. annex overflow in December 2001, caring for patients after he was not to be allowed in any of the same areas as Plaintiff due to sexual harassment, may constitute a mistake as to the date or typographical error. However, Plaintiff did not go to work for Defendant until January 17, 2002, and Wagner was not transferred out of I.C.U. and told to avoid the area until August 2002. Assuming that the date in the statement is a mistake or typographical error intended to be 2002, at most this statement could support Plaintiff's claim that Wagner was present in the I.C.U. or the I.C.U. annex after August 27, 2002. There is, as noted above, no evidence this fact was ever reported to Defendant. All in all, the statement of Mr. Koper has very little probative value in deciding the motion.

(2) <u>The transcripts of recorded conversations</u>.

The transcripts contain rambling, often inaudible, sometimes sexually suggestive and off color conversations of what Plaintiff describes as co-workers. Only one co-worker, Karen Poggi, is specifically identified as being the subject of recordings, but no particular statements are identified as having been made by her. The typist certifies without benefit of a notary public that she has transcribed the CD in question to the best of her ability and that the transcript is a correct record thereof. Counsel has not directed us to any other authenticating affidavit or declaration. The speakers are not identified. The time when the recording was made is not revealed. Authentication as to where the conversations occurred is not provided. The recording is not authenticated by a person with first-hand knowledge that the recording correctly reflects the conversations which occurred at that time.

If the transcripts are not offered for the truth of the matters stated in the statements, they may not be inadmissible as hearsay. Conceivably the transcripts are offered to show the general tone of the Washoe environment, but, for the reasons stated above, they offer little relevant, probative evidence in that respect.

Nevertheless, the transcripts fall far short of needed authentication to be considered admissible evidence in relation to the pending summary judgment motion and they will not be considered by the court.

<u>ANALYSIS - FIRST CAUSE OF ACTION</u>

The First Cause of Action is denominated as a hostile work environment claim but is based solely on the conduct of Michael Wagner, a co-worker of Plaintiff. Therefore, while it bears some of

7

the earmarks of a hostile work environment claim, the claim really boils down to a co-worker sexual harassment claim.

If an employer knowingly tolerates sexual harassment of an employee, it is deemed to have adversely changed the terms of employment in violation of Title VII. In this respect co-worker harassment is related to a hostile work environment. If an employer fails to take corrective action, after learning of a co-worker's harassing conduct, or takes inadequate action that emboldens the harasser to continue the misconduct, the employer can be deemed to have adopted the offending conduct and its results, as if it had been authorized affirmatively as the employer's policy. Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment. This obligation entails:

(1) temporary steps the employer takes to deal with the situation while it determines whether the claim is justified;

(2) permanent remedial steps taken by the employer once it has completed the investigation.

Here the record is undisputed that Plaintiff notified her supervisor of the harassment on August 26, 2002. The employer Defendant immediately took effective action on August 27, 2002, the next day. Plaintiff testified that she did not suffer any sexual harassment after that time. The action taken by Defendant to discipline Wagner was effective and adequate. There is no requirement that Wagner have been discharged to satisfy the obligations placed on Defendant under the circumstances.

Among other things Wagner was transferred out of Plaintiff's work area, the I.C.U. and I.C.U. annex and required to stay out of those areas.

Mr. Koper's statement includes a claim that he saw Wagner in the I.C.U. annex in December 2001 caring for patients after Defendant agreed he would not be allowed in any of the same areas as Plaintiff. If we assume Mr. Koper intended to use the date December 2002, rather than 2001, and assuming Plaintiff's own verified statements also are intended to make reference to this same presence of Wagner, the mere presence of Wagner caring for patients, without any thing else at all, can hardly be considered to constitute a hostile work environment or a continuation of any claimed previous hostile work environment, or co-worker sexual harassment, or any claimed continuation of such harassment.  Furthermore, such mere presence of Mr. Wagner without more is not evidence that the Defendant's actions did not end the sexual harassment.

Viewed as a hostile work environment claim, there is no evidence here that Defendant's management knew or should have known of the harassment, until it was reported by Plaintiff to her supervisor on August 26, 2002.  There is no evidence that prompt, effective remedial disciplinary action was not immediately taken to end the harassment and to deter future harassment from the same or other offenders.

The *Farragher/Ellerth* analysis does not apply here because there is no evidence that any supervisor or management employee of Defendant was involved in the harassment or the hostile work environment.

For these reasons the Defendant's motion for summary judgment will be granted as to the Plaintiff's First Cause of Action for co-worker sexual harassment/hostile work environment.

9

ANALYSIS - SECOND CAUSE OF ACTION

Plaintiff's Second Cause of Action is for retaliation for Plaintiff having complained of Wagner's conduct. The claimed retaliation consisted of verbal abuse, disciplinary action, excessive scrutiny, suspension, and termination.

Under 42 U.S.C. § 2000e-3(a) it is an unlawful employment practice to discriminate against an employee because she has complained about sexual harassment to her supervisor. To establish a prima facie case for a claim of retaliation, Plaintiff must demonstrate:

(1) statutorily protected participation in opposing Title VII discrimination;

(2) that Plaintiff suffered an adverse employment action subsequent to the protected activity; and

(3) a causal connection between the protected activity and the employment action.

An adverse employment action is one reasonably likely to deter employees from engaging in the protected activity. The standard is subjective in part. It is a question of whether the adverse employment action is likely to deter the complaining party from engaging in the protected activity. The standard is also objective in part as to whether the action is reasonably likely to deter others from protected activity. Here, verbal abuse, excessive scrutiny, the bringing of disciplinary actions against Plaintiff and her suspension are sufficient at the summary judgment stage of the case to constitute adverse employment actions.

Defendant basically challenges whether Plaintiff has shown a causal link between the protected activity and the claimed adverse employment action.

A causal link may be inferred from temporal proximity. Here the protected activity occurred on August 26, 2002. The Notices of Corrective Action (the disciplinary proceedings) occurred in October 2002. The disciplinary proceedings occurred within two months after the protected activity. Two months may be a close enough proximity in time to infer a causal link. There is a genuine issue of material fact as to whether the claimed adverse employment action occurred because of the protected activity. The temporal relationship is sufficient to raise the issue.

Plaintiff claims constructive discharge. While the evidence of this is questionable, it is sufficient to raise a genuine issue of material fact as to whether the claimed constructive discharge constituted an adverse employment action. It is true that Plaintiff filed a letter of resignation, but she claims this was because of a hostile work environment, which in a sense in this case, perhaps it could be claimed, was itself an adverse employment action, if such arose because of Plaintiff's complaints.

In analyzing the burden of proof here, Plaintiff has made a prima facie case of retaliation, Defendant has offered neutral, non-retaliatory reasons for its adverse employment actions, and there is a genuine issue of material fact whether these reasons are pretextual.

For these reasons, Defendant's motion for summary judgment as Plaintiff's Second Cause of Action will be denied.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#37) is **GRANTED** as to Plaintiff's First Cause of

Action for co-worker sexual harassment/hostile work environment and is **DENIED** as to Plaintiff's Second Cause of Action for retaliation.

Dated this 28th day of February, 2006.

*Edward C. Reed*
_____
UNITED STATES DISTRICT JUDGE